| | |
|---|---|
| Daniel Redford, <br><br> *Plaintiff*, <br><br> v. <br><br> City of Charlotte <br><br> *Defendant*. | **DEFENDANT CITY OF CHARLOTTE'S ANSWERS AND AFFIRMATIVE DEFENSES** |

Now comes Defendant City of Charlotte (the "City"), which answers the allegations of Plaintiff's Complaint below.

**PRELIMINARY STATEMENT**

1. This is a civil action brought by Plaintiff Daniel Redford ("Plaintiff" or "Officer Redford") against Defendant City of Charlotte, North Carolina, ("Defendant" or "City") for violations of his First Amendment rights under the United States Constitution and the North Carolina Constitution. Plaintiff seeks redress under 42 U.S.C. § 1983 for retaliation against him for engaging in protected speech on matters of public concern, as well as claims under North Carolina law for wrongful discharge in violation of public policy and whistleblower protections.

**ANSWER**: Paragraph 1 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 1.

2. Plaintiff(s) seek(s) compensatory damages, backpay, damages for emotional distress, declaratory, and injunctive relief, including but not limited to an order enjoining

1

Defendant from engaging in any further violation of Plaintiff's North Carolina and federal constitutional rights.

**ANSWER**: Paragraph 2 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 2.

### JURISDICTION

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the laws of the United States, specifically 42 U.S.C. § 1983. This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

**ANSWER**: Paragraph 3 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 3.

### VENUE

4. Venue is proper in this district under 28 U.S.C. § 139l(b)(l) and (b)(2) because the Defendant resides in this district and a substantial part of the events giving rise to the claim occurred in this district.

**ANSWER**: Upon information and belief, Defendant admits the allegations contained in paragraph 4.

### PARTIES

5. Plaintiff Daniel Redford is a resident of Charlotte, North Carolina, and has been employed by the Charlotte-Mecklenburg Police Department ("CMPD") for 19 years. He also serves as the President of the local Fraternal Order of Police ("FOP").

**ANSWER**: Upon information and belief, Defendant admits that Plaintiff is a resident of Mecklenburg County and has been employed as a police officer with the Charlotte-

Mecklenburg Police Department for 19 years. Defendant further admits that Plaintiff serves as the President of the local Fraternal Order of Police.

6. Defendant City of Charlotte is a municipal corporation located in Mecklenburg County, North Carolina, and operates the CMPD.

**ANSWER**: Defendant admits the allegations contained in paragraph 6.

### Well Established Law-First Amendment- Speech

7. It is the well-established law that the First Amendment to the Constitution of the United States, as applicable to the States by virtue of the Fourteenth amendment to the Constitution of the United States, guarantees to Plaintiff not withstanding their employment by a government body the right to comment as citizens on matters of public concern free from unnecessary and unreasonable interference, retaliation, and prior restraint from their employee and agents of their employee.

**ANSWER**: Paragraph 7 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 7.

8. The First Amendment made applicable to the States by virtue of the Fourteenth Amendment, protects the right of every citizen to petition the government for redress of grievances.

**ANSWER**: Admitted that Plaintiff has rights secured by the United States Constitution and the North Carolina Constitution. Except as expressly admitted, Defendant denies the allegations in paragraph 8.

9. It is the well-established law that "[w]hile a public employee does not have a constitutional right to his job," a public employer cannot condition public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression."

3

*Edwards v. City of Goldsboro*, 178 F.3d 23 L245 (4th Cir. N.C. 1999). (*quoting Connick v. Myers*, 461 U.S. 138, 142, 75 L. Ed. 2d 708, l03 S. Ct. 1684 (1983)).

**ANSWER**: Paragraph 9 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 9.

10. It has been the well-established law in the Fourth Circuit since at least *Ridpath* v. *Bd. Of Governors Marshall Univ*., 447 F.3d 292, 319 (4th Cir. W. Va. 2006) that:

Under our precedent "a public employer is prohibited from threatening to discharge a public employee in an effort to chill that employee's rights under the First Amendment." *Edwards v. City of Goldsboro*, 178 F.3d 231, 246 (4th Cir. 1999). [Footnote in text: As the Supreme Court has explained, 'the threat of dismissal from public employment is...a potent means of inhibiting speech. *Pickering v. Bd. of Educ*., 391 U.S. 563, 574, 88 S. Ct. 1731 20 L. Ed. 2d 811 (1968).] A chilling claim is essentially the derivative of a retaliation claim: if a public employer cannot fire, demote, or similarly punish a public employee for engaging in protected speech, the employer also cannot intimidate the employee into silence by threatening impermissible retribution.

**ANSWER**: Paragraph 10 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 10.

11. It has been the well-established law in the Fourth Circuit since at least *Connick v. Mvers*, 461 U.S. 138,154 (1983) (quoting *Pickering v. Bd of Educ*., 391 U.S. 563, 569 (1968))... that "[b]ecause of the enormous variety of fact situations in which critical statements by...public employees may be thought by their superiors...to furnish grounds for dismissal we do not deem it either appropriate or feasible to attempt to lay down a general standard against which all such statements may be judged.

4

**ANSWER**: Paragraph 11 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 11.

12. As evident from *Connick v. Myers*, 461 U.S. 138, 154 (1983) and the great bulk of cases that came before it and after it on point, there was and is no bright-line rule excluding from the protection of the First Amendment "[n]egative comments on the internal operations of [the speaker's public body employer], or specific conduct of supervisors or peers that impacts the public's perception [of the public body]."

**ANSWER**: Paragraph 12 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 12.

13. Further, a prohibition based upon generalized and unsubstantiated interests against disruption rather than actual interference of the office is a violation of the First Amendment. *Goldstein v. Chestnut Ridge Volunteer Fire Co.*, 218 F.3d 337, 356 (4th Cir. 2000).

**ANSWER**: Paragraph 13 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 13.

14. Additionally, the employee's interest in commenting on matters of public concern outweighs the government's interest in efficiency unless the employee-speaker is an agency-head or is in a policy making position. See *McVey v. Stacy*, 157 F.3d 27L 278-79 (4th Cir. 1998).

**ANSWER**: Paragraph 14 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 14.

15. The foregoing well-established law was sufficiently clear by March 2025 that a reasonable official would have understood it.

**ANSWER**: Paragraph 15 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 15.

5

16. The state of the law at the time gave City of Charlotte sufficient reason to know that their actions, complained of herein, were clearly wrong and unconstitutional.

**ANSWER**: Paragraph 16 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 16.

17. The threshold determination focuses on whether the speech may be fairly characterized as constituting speech on a matter of public concern. *Rankin v. McPherson*, 483 U.S. 378 (1987).

**ANSWER**: Paragraph 17 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 17.

18. Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community. *Kirby v. City Of Elizabeth City, North Carolina* 388 F.3d 440 (2004).

**ANSWER**: Paragraph 18 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 18.

19. Courts examine the content, form, and context of a given statement and must view statements as a single expression of speech to be considered in its entirety rather than dividing speech into discrete components. *Liverman v. City of Petersburg*, 844 F.3d 400 (2016).

**ANSWER**: Paragraph 19 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 19.

20. The Fourth Circuit has identified several categories of police officer speech that constitute matters of public concern.

**ANSWER**: Paragraph 20 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 20.

6

21. In *Liverman v. City of Petersburg,* with facts almost identical to those included herein, the court held that police officers' Facebook comments about department training and promotion practices constituted protected speech because they addressed risks posed by the Department's inexperienced supervisors and raised issues of public concern. *See Liverman v. City of Petersburg,* 844 F.3d 400 (2016).

**ANSWER**: Paragraph 21 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 21.

22. The officers grounded their statements in specialized knowledge and expressed concern about the department's ability to carry out its vital public mission effectively, with one officer citing an FBI study and noting implications for officer safety and questions of liability. See *Liverman v. City of Petersburg*, 844 F.3d 400 (2016).

**ANSWER**: Paragraph 22 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 22.

23. Off-duty activities with social or political implications also receive protection. In *Edwards v. City of Goldsbor*o, the 4th Circuit held that a police officer's off-duty teaching of concealed handgun safety courses was protected speech on a matter of public concern. *Edwards v. City of Goldsbor*o, 178 F.3d 231 (1999).

**ANSWER**: Paragraph 23 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 23.

24. Similarly, in *Berger v. Battaglia* the court found that a police officer's off-duty entertainment performances in blackface constituted speech on a matter of public concern, even though the speech was presumably neutral as to any political or social views. *See Berger v. Battaglia,* 779 F.2d, 992 (1985).

7

**ANSWER**: Paragraph 24 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 24.

25. The Fourth Circuit has emphasized that it was clearly established in the law of this Circuit in March 2025 that an employee's speech about serious governmental misconduct, and certainly not least of all serious misconduct in a law enforcement agency, is protected. *Hunter v. Town of Mocksville, North Carolina*, 789 F.3d 389 (2015).

**ANSWER**: Paragraph 25 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 25.

26. This protection extends particularly to situations where officers report or comment on police misconduct that could affect public safety or welfare.

**ANSWER**: Paragraph 26 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 26.

## FACTUAL BACKGROUND

27. Officer Redford, in his capacity as President of the FOP, engaged in protected speech activities, including media interviews and social media posts, addressing matters of public concern such as the CMPD's response to a deadly shooting on April 29, 2024, and the reprimand of officers involved.

**ANSWER**: Paragraph 27 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 27.

28. On May 28, 2024, Officer Redford responded to a media inquiry from Nate Morabito of WCNC-TV regarding officers logging off during the shooting, clarifying that it was not a large number, in his capacity as FOP President.

8

**ANSWER**: Defendant admits that Plaintiff responded to a media inquiry regarding officers logging off during the shooting. Defendant denies the remaining allegations contained in paragraph 28.

29. Officer Redford is a Charlotte-Mecklenburg Police ("CMPD") Officer and also serves as the local Fraternal Order of Police ("FOP") President, which is an employee organization operating in a union-like manner.

**ANSWER**: Upon information and belief, Defendant admits the allegations contained in paragraph 29.

30. As a dedicated 19-year employee, throughout his tenure, Officer Redford acted in the best interests of the employer, ensuring compliance with all policies and procedures.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 30.

31. Officer Redford previously had "exceeds expectations" in his performance evaluations.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 31.

32. The FOP made statements on its official Facebook page, and as president, Officer Redford participated in several media interviews regarding actions by the CMPD.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 32.

33. Officer Redford began being subject to undue pressure, discrimination, and retaliation following his engagement in free speech activity protected by the First Amendment of

the U.S. Constitution. and the Declaration of Rights. Freedom of Speech and Press Clause of the North Carolina Constitution to wit:

**ANSWER**:  Paragraph 33 states legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 33.

34.     On or about April 29, 2024, Charlotte experienced a deadly shooting that left four law enforcement officers dead and several others wounded.

**ANSWER**:  Defendant admits the allegations contained in paragraph 34.

35.     This made national news, and media outlets repeatedly contacted Plaintiff directly and the FOP for comment.

**ANSWER**: Defendant admits that the shooting made national news. Defendant lacks information sufficient to admit or deny the additional allegations of paragraph 35.

36.     A couple of weeks after this shooting, the FOP learned that two CMPD officers had logged off their computers and defected to avoid assisting with this shooting.

**ANSWER**:  Defendant lacks information sufficient to admit or deny the allegations of paragraph 36.

37.     Due to their defection, the FOP learned of two officers that CMPD had reprimanded and transferred, one from the Providence Division and a second from the Central Division.

**ANSWER**:  Defendant lacks information sufficient to admit or deny the allegations of paragraph 37.

38.     On or about May 28, 2024, Nate Morabito ("Morabito") with WCNC-TV texted Officer Redford asking if the FOP had heard about "a large number of officers" that "logged off" during the shooting.

10

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 38.

39. In his capacity as President of the FOP only, not speaking on behalf of the CMPD. Officer Redford replied that he only heard that it was not a large number.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 39.

40. Morabito received information from another source about the officers who logged off.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 40.

41. Morabito and Officer Redford, again through the FOP only, have worked on several stories in the past, which is how they came to know each other.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 41.

42. Morabito was working on a potential news story as he and his station believed officers logging off during this deadly shooting was newsworthy.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 42.

43. Officer Redford did not disclose any confidential information or information that violated CMPD's policies.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 43.

44. All information was obtained via Officer Redford's position with the FOP.

11

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 44.

45.     On or about July 23, 2024, Morabito published a story, which did not contain any comments by the FOP or Officer Redford, nor were they referenced in it.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 45.

46.     On or about July 27, 2024, the FOP made a Facebook post, on the Lodge's official Facebook page.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 46.

47.     The post spoke against CMPD's response to Morabito's request for comment and information.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 47.

48.     The post was critical of Sandra Vastola ("Vastola"), the CMPD's Public Affairs Director.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 48.

49.     At this time, the FOP knew that two officers had been reprimanded, and CMPD's dismissive response was the catalyst for this post.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 49.

50. On or about August 22, 2024, Morabito published a second story on this matter, confirming that two CMPD officers had been reprimanded, with one being suspended.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 50.

51. Officer Redford, again only in his capacity as the FOP President, participated in an interview, in which he never identified himself as a CMPD officer.

**ANSWER**: Defendant is without sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in paragraph 51; therefore, Defendant denies them and demands strict proof thereof.

52. However, Morabito did use a photo of Officer Redford in uniform that he obtained from an internet search.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 52.

53. On or about October 30, 2024, Vastola filed a lawsuit ("the Vastola lawsuit") against Officer Redford and the FOP relating to the Facebook posts.

**ANSWER**: Upon information and belief, Defendant admits the allegations contained in paragraph 53.

54. On or about November 16, 2024, Officer Redford was served with the Vastola lawsuit at his home via certified mail and later retained counsel.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 54.

13

55.	On or about November 18, 2024, two days after Officer Redford was served with the Vastola lawsuit, Vastola filed an Internal Affairs ("IA") complaint with CMPD's IA Department for violations of departmental directives and rules of conduct.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 55.

56.	The IA complaint essentially replicated the one she had filed in the Vastola lawsuit.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 56.

57.	On or about December 23, 2024, Officer Redford received a phone call from Lieutenant Triola, his supervisor at that time asking if he was working because IA wanted to speak with him.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 57.

58.	However, Officer Redford was out on bereavement leave for the whole week.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 58.

59.	On or about December 30, 2024, upon returning to work, Officer Redford was contacted by Sergeant Nabb with IA asking him to meet him to discuss a matter, where he was informed of Vastola's IA complaint against him.

**ANSWER**: Upon information and belief, Defendant admits the allegations contained in paragraph 59.

60.	Officer Redford was interviewed and returned to his assignment in the Transit Unit.

14

**ANSWER**: Upon information and belief, Defendant admits the allegations contained in paragraph 60.

61.    On or about January 22, 2025, Officer Redford filed a complaint with the City of Charlotte's Human Resources as the IA investigation violated his rights and was a conflict due to the pending Vastola lawsuit.

**ANSWER**: Defendant admits that Plaintiff filed a complaint with the City of Charlotte's Human Resources. Defendant denies the remaining allegations contained in paragraph 61.

62.    On or about February 6, 2025, Officer Redford was called in for a second IA interview, and on or about February 17, 2025, for a third and final interview.

**ANSWER**: Upon information and belief, Defendant admits Officer Redford was called in for a second IA interview on February 6,2025. Defendant denies the remaining allegations contained in paragraph 62.

63.    On or about March 20, 2025, Officer Redford appeared before CMPD's IA disciplinary board and was suspended for 40-hours unpaid for violating CMPD's Social Media Policy, Media Relations Policy, and Unbecoming Conduct.

**ANSWER**: Upon information and belief, Defendant admits the allegations contained in paragraph 63.

64.    IA ruled that the Facebook ("FB") posts were a violation and that as the President of the FOP Officer Redford allowed them to be posted.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 64.

15

65. In sum, IA ruled that as a CMPD employee, Officer Redford was responsible even though his name was never published, and all statements were made via the FOP's official Facebook page.

**ANSWER**: Defendant denies the allegations in paragraph 65, as worded.

66. In addition to the FB posts, IA ruled Officer Redford violated the Media Relations Policy by not receiving permission to speak with the media.

**ANSWER**: Defendant denies the allegations in paragraph 66, as worded.

67. Officer Redford was also suspended for another FOP Facebook post again on the FOP's official page that did not have his name associated with it, which spoke out against a matter of public concern: the CMPD Chief's opposition to equipping officers with outer carrier vests - something officers were begging for.

**ANSWER**: Defendant denies the allegations in paragraph 67, as worded.

68. On or about March 28, 2025, Officer Redford returned to work from unpaid suspension and was called to his Lieutenant and Captain's office, where he was informed that he was being transferred from his specialized unit in the Transit Unit back to patrol.

**ANSWER**: Upon information and belief, Defendant admits the allegations contained in paragraph 68.

69. As a result, Plaintiff lost a city take-home vehicle, overtime opportunities, a Monday-Friday schedule with lots of flexibility, and a better work/life balance.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 69.

70. On or about April 1, 2025, the Vastola lawsuit was heard before Mecklenburg County Superior Court Judge Matt Osman and was dismissed with prejudice.

16

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 70.

71. Upon information and belief, the Vastola lawsuit is now on appeal with the N.C. Court of Appeals.

**ANSWER**: Defendant lacks information sufficient to admit or deny the allegations of paragraph 71.

72. The City's actions, including the disciplinary actions taken against Officer Redford violated Officer Redford's constitutional rights under the First Amendment of the United States Constitution and similar provisions of the North Carolina Constitution.

**ANSWER**: Paragraph 72 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 72.

## COUNT ONE

## VIOLATION OF FIRST AMENDMENT RIGHTS UNDER 42 U.S.C. § 1983

73. PLAINTIFF repeat(s) and reallege(s) paragraphs 1 through 72 hereof, as if fully set forth herein.

**ANSWER**: Defendant incorporates all prior responses as if fully stated herein.

74. Defendant acting under color of state law, retaliated against Plaintiff for engaging in protected speech on matters of public concern, in violation of the First Amendment to the United States Constitution.

**ANSWER**: Admitted that Defendant was acting under the color of state law. Except as expressly admitted, denied.

17

75.    Plaintiff's speech was a substantial or motivating factor in the adverse employment actions taken against him, including suspension and transfer.

**ANSWER**:  Paragraph 75 states legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 75.

76.    As a result of Defendant's actions, Plaintiff has suffered damages, including lost wages, benefits, and emotional distress.

**ANSWER**:  Paragraph 76 states legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 76.

77.    By reason of the foregoing, defendant is liable an amount to be determined at trial, plus interest, attorneys' fees, and costs.

**ANSWER**:  Paragraph 77 states legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 77.

## COUNT TWO

## VIOLATION OF NORTH CAROLINA CONSTITUTION

78.    PLAINTIFF repeats and realleges paragraphs 1 through 77 hereof, as if fully set forth herein.

**ANSWER**: Defendant incorporates all prior responses as if fully stated herein.

79.    Defendant's actions violated Plaintiff's rights under Article I, Section 14 of the North Carolina Constitution, which protects freedom of speech and press.

**ANSWER**:  Paragraph 79 states legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 79.

80.    Plaintiff's speech addressed matters of public concern and was protected under the North Carolina Constitution.

18

**ANSWER**:  Paragraph 80 states legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 80.

81.     As a result of Defendant's actions, Plaintiff has suffered damages, including lost wages. benefits, and emotional distress.

**ANSWER**:  Paragraph 81 states legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 81.

82.     By reason of the foregoing, defendant is liable an amount to be determined at trial, plus interest, attorneys' fees, and costs.

**ANSWER**:  Paragraph 82 states legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 82.

**COUNT THREE RETALIATION**

83.     Plaintiff repeats and realleges paragraphs 1 through 82 as if fully set forth herein.

**ANSWER**:  Defendant incorporates all prior responses as if fully stated herein.

84.     Defendant's retaliatory actions against Plaintiff for engaging in protected speech contravene the public policy of North Carolina, as expressed in the state's constitution and statutes.

**ANSWER**:   Defendant denies their actions were retaliatory against the Plaintiff. Defendant further denies as to the remaining allegations in paragraph 84.

85.     Plaintiff's termination from his specialized unit and the resulting loss of benefits were wrongful and in violation of public policy.

**ANSWER**:  Paragraph 85 states legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in paragraph 85.

86.     Plaintiff lacks an adequate remedy at law.

19

**ANSWER**: Paragraph 86 states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in paragraph 86.

87.     By reason of the foregoing, plaintiff(s) seek(s) immediate restoration to his previous specialized unit, as well as restoration of the benefits retroactive to the date of the removal by the Defendant.

**ANSWER**: Defendant admits that Plaintiff is seeking remedies as stated in paragraph 87.

### **<u>Affirmative Defenses</u>**

The City asserts the following affirmative defenses:

1. Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

2. Plaintiff's alleged injuries were not proximately caused by the conduct of Defendant.

4. Defendant's actions and the actions of its agents, employees, etc., were objectively reasonable and were done in good faith and without malice to Plaintiff or any other individual.

5. Defendant did not breach any duty it owed to Plaintiff.

6. Defendant City of Charlotte is a municipality organized under the laws of the State of North Carolina. As such, Defendant is protected and hereby asserts governmental and/ or sovereign immunity to the extent permitted by applicable laws as a bar to Plaintiff's claims against Defendant.

20

7. Plaintiff's claims against Defendants are barred, reduced, and/or limited pursuant to applicable statutory provisions and common law doctrines regarding limitations of awards and caps on recovery.

8. Plaintiff's damages, if any, should be reduced to the extent that he failed to mitigate his damages.

9. Plaintiff's damages, if any, were caused by non-parties or third parties not a party to this lawsuit.

10. Defendant hereby gives notice that it intends to rely on any other defenses as any become available or apparent during discovery proceedings. Defendant specifically reserves the right to amend its Answer to further assert additional affirmative defenses.

## Reservation of Rights

The City reserves the right to raise any other defenses that may become available or apparent during discovery in this matter. The City further reserves the right to amend its answers and to further assert affirmative defenses to conform to the evidence in this case.

## Prayer for Relief

The City respectfully requests that the Court take the following actions:

1. Find in favor of Defendant City of Charlotte and against Plaintiff;

2. Dismiss this lawsuit and deny all relief requested by Plaintiff;

3. Award Defendant City of Charlotte its reasonable attorney's fees and costs to the extent allowed by law; and

21

4.      Award Defendant City of Charlotte such other relief that the Court deems just.


Dated:  October 28, 2025

**OFFICE OF THE CITY ATTORNEY**

/s/ Isaac Sturgill
Isaac Sturgill, N.C. Bar No. 44837
Charlotte-Mecklenburg Government Center
600 East 4th St., 7th Floor, #747
Charlotte, NC 28202
Telephone: (980) 417-3057
Isaac.Sturgill@charlottenc.gov

*Attorney for Defendant City of Charlotte*

22

# CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing Defendant City of Charlotte's Answer and Affirmative Defenses to be filed with the Clerk of the Court using the CM/ECF system and served on all counsel of record for the parties by the court's electronic filing system, and by email to Plaintiff's attorney, as follows:

Brian K. Leonard, Esq.
B.K. Leonard Law Firm
bleonard@civilrightsappellatelawyer.com

Dated: October 28, 2025

/s/ Isaac Sturgill
Isaac Sturgill, N.C. Bar No. 44837
Assistant City Attorney